ADAMS *v.* FIRST BAPTIST CHURCH OF ST. CHARLES.

WILLS—CONSTRUCTION—CONDITION SUBSEQUENT—FORFEITURE.

> Land was devised to a church "to be used as a parsonage and nothing else, and to be kept for that purpose and used for nothing else." There was no devise over. The house was not suitable for a residence for the minister, and it was his custom to rent it and live elsewhere. On ejectment by the residuary legatee, *held,* that there was no breach of condition subsequent which should work a forfeiture.

Error to Saginaw; Gage (William G.), J. Submitted November 15, 1906. (Docket No. 168.) Decided April 30, 1907.

Ejectment by Fred L. Adams against the First Baptist Church of St. Charles and others. There was judgment for defendants, and plaintiff brings error. Affirmed.

*Walsh & Pardee,* for appellant.

*Walter J. Lamson,* for appellees.

MOORE, J. This is an action of ejectment brought by the plaintiff as residuary devisee in the will of Lydia M. Barker, deceased, against the defendants to recover the possession of certain real estate in the village of St. Charles, Mich. July 30, 1887, Mrs. Barker and her husband made a will, the material parts of which read as follows:

> "Know all men by these presents that I, Calvin Barker and Lydia M. Barker, residents of St. Charles (but now for a short time) living in the town of Freemont, Saginaw Co., Mich., do will and bequeath to the Baptist Church of St. Charles, all personal, or real estate, or money, after the decease of said Calvin and Lydia M. Barker, when all debts for funeral or other honest claims and an honorable burial, shall have transpired. If any of the

estate, above mentioned should remain, then whatever the amount shall go for the benefit of the said Baptist church specified in this will."

After the death of Mr. Barker, and on the 17th day of March, 1890, Mrs. Barker attached a codicil to said will, the material part of which reads:

"Now I do by this my writing which I hereby declare to be a codicil to my said will and Calvin G. Barker heretofore made and taken as a part thereof will and direct that the house and lots 4 and 5 block H, in the village of St. Charles shall go to the First Baptist Church to be used as a parsonage and nothing else, and to be kept for that purpose and used for nothing else. I also give and bequeath one looking glass, stand on drawers, to Mrs. Emma Willis, also one spool stand to Mrs. John Holliday, also one parlor stove to Frank McNeal. I also give and bequeath all my household goods, cook stove and utensils belonging thereto, also one set of silver knives and forks and also all beds and bedding and clothes to Fred Adams and his wife. I also give and bequeath to Mrs. Emma Willis one marble table castor. I also make this request that there shall be a tombstone similar to that of my husband, Calvin Barker, placed at the head of my grave and that the date of my death and age shall be marked on the monument and I, Lydia M. Barker, also give and bequeath all the residue of my property and claims outstanding after all my funeral expenses and debts are paid by expenses made hereafter to Fred Adams."

Fred Adams, the plaintiff, is the grandnephew of Mrs. Barker. After her death the will and codicil were probated. In June, 1894, lots 4 and 5 were assigned to the defendant. The personal property was all turned over to the several legatees mentioned in the will. The executor reported the monument mentioned in the will had been placed at the grave of the deceased, "and all of the expenses of administration, including fees, have been paid by the residuary legatee, the First Baptist Church of St. Charles as moiety." This action was commenced in December, 1904. The case was tried before the circuit judge without a jury. He made certain findings of fact and conclusions of law, and rendered judgment in favor

of defendant. The plaintiff has brought the case here by writ of error.

The important question is whether plaintiff, under the facts disclosed by the record and the provisions of the will and codicil, can maintain this action. At the time of Mrs. Barker's death the plaintiff was living in the house, caring for her. He continued to live in the house until the assignment of the property was made in June, 1894. He then moved out. The house in controversy is just across the street from the church owned by defendant. The defendant did not then have a parsonage, and from then until the trial had none, except the house in controversy. After plaintiff moved out of the house some repairs were made upon it,. and it was rented by the defendant to Mr. Mertz, who was not a pastor of the church. Mr. Mertz moved in and lived there some time. This fact was known to the plaintiff. The record discloses that the house is a small one, quite cold in winter; that sometimes it was occupied by the pastor of the church; that at other times it was rented by the pastor to other parties, and the rent collected by him as part of his salary. The income from the property when the property was not used by the pastor has always been used as part of the compensation of the pastor of the church. Mr. and Mrs. Corbin were tenants when this action was begun.

The church records show the following: .

"July 23, 1896. It is also agreed by the church that William Allenbough will be granted free use of the parsonage during the term of his pastorate, and also for the month of July, 1896.     *     *     *

"June 22, 1899. It was unanimously voted to extend a call to Rev. A. J. Spouse, of South Saginaw, and the clerk was instructed to write to him at once and offer him a salary of $500 a year and use of the parsonage."

Like action was taken as to other pastors November 24, 1901, November 13, 1902, November 8, 1903, May 19, 1904, and September 11, 1904; and also the following December 17, 1905:

"Moved and carried that we extend a call to Rev. C. A. Sallier, of Ithaca, Mich.  Salary to be $12 a week and the parsonage."

It also appears that the defendant paid expenses of administration, etc., amounting to $68.49, and from time to time has caused repairs to be made upon the church, and has discussed plans for rebuilding the house when the society becomes able to do so.  It also appears that the village, because of the opening of mines in that vicinity, has 500 or 600 more inhabitants than it had in 1894, while the church membership has increased from 25 in 1894 to 50 at the time of the hearing.  There is nothing in the record to show that the church had abandoned the building as a parsonage, unless the inference is to be drawn from the fact that no pastor had actually lived in the building for two years prior to the trial.

It is the claim of the plaintiff that because defendant is not actually occupying the premises as a parsonage, and as plaintiff is residuary legatee, he is entitled to maintain this action.

Defendant insists (1) that by the terms of the will and codicil it became the owner in fee of the property; (2) that, if it did not, as Mrs. Barker had heirs at law, plaintiff, not being one of them, cannot maintain this action; (3) that, if plaintiff as residuary legatee could maintain the action, he has waived his right to claim that defendant has been guilty of a breach of the condition contained in the codicil; (4) that there has been no breach of the condition contained in the codicil.

At the time the will was made the title to the real estate was in Mrs. Barker, and it remained in her until her death.  A reading of the will discloses an intention, after the payment of debts, funeral and burial expenses, to give and bequeath to the defendant all of the property of the testators.  The codicil made an entirely different disposition of all of the personal property.  The codicil is declared to be a codicil of the will, to be taken as a part thereof.  While it directs the use to be made of the real

estate willed to the defendant, it nowhere suggests that in case of a failure to so use it the bequest shall fail. It has frequently been held that conditions subsequent are not favored in the law when they defeat estates. *Calkins* v. *Smith's Estate*, 41 Mich. 409. See, also, *McCarty* v. *Fish*, 87 Mich. 48.

In *Barrie* v. *Smith*, 47 Mich. 130, it is held that conditions subsequent, tending as they do to destroy estates, are to be strictly construed. It is also held therein that a condition subsequent may be waived where broken by the party who has the right to avail himself of it, and this may be proven as well by acts and conduct as by an express agreement, and when once waived is gone forever.

In *Stanley* v. *Colt*, 5 Wall. (U. S.) 119, there is a very interesting discussion as to whether the provisions of the will were to be regarded as strict common-law conditions, a breach of which would work a forfeiture and let in the heir, or whether they were regulations for the guidance of the trustees. A quotation was made, apparently with approval, as follows:

"Mr. Sugden, speaking of conditions, observes that what by the old law was deemed a devise upon condition would now perhaps, in almost every case, be construed a devise in fee upon trust, and by this construction, instead of the heir taking advantage of the condition broken, the cestui que trust can compel an observance of the trust by a suit in equity."

It was also held that whether the devise was a condition subsequent or a regulation for the management of the estate was to be gotten, not from any particular expression in the devise, but from the whole instrument. It was said in that case that the devise was not a condition subsequent, a breach of which forfeited the devise. See *Strong* v. *Doty*, 32 Wis. 381.

In *Bailey* v. *Wells*, 82 Iowa, 131, a deed of a lot was made with a provision that it should be used "as a parsonage lot or church purpose and no other," and, if not so used, should revert to the grantor. No parsonage was

built.   The evidence showed that public worship was maintained in the church except at intervals when it was infrequent.   The church was kept up and maintained by farmers who hitched their teams upon the lot in question during the service.   It was held there was no reversion.

In *Downen* v. *Rayburn*, 214 Ill. 342, it was held that in construing a deed containing restrictions as to the use of property conveyed in fee all doubts should be resolved against the restrictions.

In *Higbee* v. *Rodeman*, 129 Ind. 244, in construing a deed which " conveys and warrants " a parcel of land for common school purposes, the court used the following language:

" Conditions subsequent are not favored in law, but are strictly construed.   The language used in the deed from Dunn to the township specifies the use to which the property would be put, but does not even tend to create a condition subsequent.   *Heaston* v. *Board of Com'rs of Randolph Co.*, 20 Ind. 398; *Schipper* v. *St. Palais*, 37 Ind. 505; *Sumner* v. *Darnell*, 128 Ind. 38 (13 L. R. A. 173)."

In *Burgson* v. *Jacobson*, 124 Wis. 295, it is held that "conditions subsequent, especially when relied upon to work a forfeiture, must be created by express terms or clear implication, and are strictly construed.   2 Washburn on Real Property (4th Ed.), p. 7."   See, also, 5 Current Law, p. 980, and the many cases cited.

In *Greene* v. *O'Connor*, 19 L. R. A. 262 (18 R. I. 56), it was held a condition subsequent is not made in a deed of land for a highway by the words "upon condition that the said strip of land shall be forever kept open and used as a public highway and for no other purpose."   See the notes to this case.   Also *Woodworth* v. *Payne*, 74 N. Y. 196; *Broadway* v. *State*, 8 Blackf. (Ind.) 290; *Mills* v. *Evansville Seminary*, 58 Wis. 135.

From whatever point of view the record before us is examined, in the light of these authorities, it does not dis-

close a breach of a condition subsequent, which should work a forfeiture of the property devised.

The conclusion reached upon this branch of the case makes it unnecessary to discuss the other questions presented by counsel.

Judgment is affirmed.

HOOKER, J., concurred with MOORE, J.

OSTRANDER, J. It is the contention of the plaintiff in ejectment, appellant here, that the words "shall go to the First Baptist Church, to be used as a parsonage and nothing else, and to be kept for that purpose and used for nothing else," which, in the will, follow the description of the real estate, have the effect to create an estate upon condition; that it is a condition subsequent, has been broken, and the estate forfeited; and that he, being made the residuary legatee in the same will, is entitled to enforce the forfeiture and to take the land. There is no devise over. After the death of the testatrix the will was duly probated, and the church went into possession of the land, and now holds possession by its tenants, the other defendants. The property is worth not to exceed $800. It is a small house and two lots. The defendant church was incorporated in 1884. It reincorporated in 1902, under the provisions of Act No. 54, Pub. Acts 1899. The codicil containing the devise in question was made in March, 1890. We are not informed of the date of the death of testatrix, but learn that it was previous to August, 1893. In the law in force at the time the church was incorporated (chapter 175, 1 How. Stat.) there is a provision (section 6) for trustees of such a corporation, with power in such trustees to take and hold in perpetuity so much land, not exceeding 20 acres, as may be needed for church buildings and yards, burial grounds, and pastor's residence. See, also, section 6, Act No. 54, Pub. Acts 1899. It is the trustees who have possession and custody of the real estate of the church, however acquired and "in whose hands soever the same may be held," and they may sue

and be sued, in their corporate capacity, in all courts. The nature and purposes of church organizations, and the statute limitations upon their right to acquire and to hold real estate, must be taken into account in considering whether the particular estate was devised upon condition, since the words employed do not of themselves necessarily create a condition. The section referred to provides that lands devised to a church or its trustees to be sold for the purpose of raising a fund for church purposes, including in the enumerated purposes the securing of a parsonage, shall revert to the donor, his or her heirs or assigns, if not disposed of within three years, or if not appropriated and used for one of the stated purposes. Such corporations may also be dissolved, and the corporate life is 30 years. I assume from the testimony and from the interest of the testatrix in the church that she was acquainted with the law of its existence. Plaintiff's counsel say, and I agree with them, that we are required to find the intention of the testatrix. 2 Jarman on Wills (6th Ed.), p. 1. I assume, first, that the intention was to make a beneficial gift. If the words are held to create a condition, we must suppose the testatrix intended the legal consequence of a breach thereof, and after any number of years, and whether the society grew beyond so small a property for such a purpose, or became too poor to maintain it in fit condition for the use of the pastor. If the words of the will are given a literal and technical meaning, they devote this little property forever to use as a parsonage by this society. It could not be forever "kept for that purpose and used for nothing else." There are two constructions, either of which is, I think, more reasonable than the one contended for by plaintiff. One, and the one to which I most incline, is that this property was given to the church absolutely, with a direction merely to use it in a specified way, subject, however, to the controlling power of the society as owner. The other is that the gift was for the purpose and purposes of a parsonage for the church, with a declared limitation of

the use to which the property or its proceeds should be devoted by the trustees, as the exigencies, growth, or convenience of the society should require. The property has been devoted to the stated use, not indeed by being at all times occupied by the pastor, although, if not so occupied, its use and the rents and profits thereof have been uniformly tendered to him. As we are required to ascertain and declare the intention of the testatrix, decided cases are of little aid. The case should be distinguished from *Hayden* v. *Inhabitants of Stoughton*, 5 Pick. (Mass.) 528, and all similar cases. There the apt word to express a condition, viz., the word "provided" was used. Again, the condition required the town, by action of its inhabitants, to do a positive thing, viz., to build a schoolhouse. The donation was accepted by action of the town but for 10 years, and more, no schoolhouse was built. It was held that a conditional fee was devised, and not an absolute fee, that there was a contingent interest which the devisor might have disposed of, and that he did dispose of it in the residuary clause of his will.

In *Brigham* v. *Shattuck*, 10 Pick. (Mass.) 306, the devise of lands made to the town of Groton was that the rents thereof might be applied to the support of the gospel minister in the town. The testator directed positively they should never be sold, but should always be rented. The opinion, by Shaw, C. J., contains the significant language following (the case was decided upon another point):

"Whether the positive order not to sell the estate annexed to the devise to the town constitutes a condition technically, so that upon a noncompliance with the order the devise became forfeited for breach of condition, whether if it be construed a condition, such a condition in perpetual restraint of alienation, after a devise in fee, is repugnant to the gift and void in point of law, * * * are questions * * * upon which the court give no opinion."

It was said that, if construed to be a condition, it was no doubt a condition subsequent.

As the words employed in the will are not such as require the construction that the land was devised upon condition, and as we may reasonably reach the conclusion that the testatrix did not intend such a meaning to be given to them, we must hold there is no condition.

The judgment is affirmed.

CARPENTER and MONTGOMERY, JJ., concurred with OSTRANDER, J.