## In re POPPLETON'S ESTATE.
### Appeal of PERKS.

No. 1898.   Decided August 5, 1908 (97 Pac. 138).

1. WILLS—CONSTRUCTION—MEANING OF TECHNICAL WORDS. Comp. Laws 1907, section 2777, providing that technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention, is but declaratory of the rule prevailing at common law, and is a rule of construction merely.

2. SAME—INTENTION OF TESTATOR. Comp. Laws 1907, section 2767, providing that a will is to be construed according to the intention of the testator, controls all other provisions in which

rules of construction are given, in that no rule is to be given effect except to ascertain the real intention of the testator as expressed by him, and rules of construction are to be resorted to as mere aids for the purpose of attaining the real intention of the testator.

3. SAME. The intention of a testator is to be ascertained from the language in the will, and, where the meaning is clear from the words used, a resort to rules of construction is not permissible, but, where the meaning of a word or phrase is not clear, and may be given either one of two or more meanings when read in the light of the whole instrument, the courts are required to look to the conditions and circumstances surrounding the testator at the time the will was made, and in the light of the same determine his true intention.

4. SAME—"MARRYING AGAIN." Testator devised real estate described to his wife, and gave to another woman named other described real estate, to be held by her for the support of herself and testator's children by her, and provided that, in the event of her "marrying again," the gift to her should become void, and the property should go to such children. A provision in similar language was made in favor of a third woman. The woman so named was testator's polygamous wife. Testator and she were members of the Mormon Church and believed in its doctrines, including the doctrine of polygamy. *Held*, that the words "marrying again" included the entering into a polygamous marriage, and the gift to such woman was within Comp. Laws 1907, section 2795, providing that a conditional disposition is one which depends on the occurrence of some uncertain event by which it is either to take effect or be defeated, and on her entering into a polygamous marriage the gift to her terminated.

APPEAL from District Court, First District; F. Erickson, Judge.

Proceedings for distribution of the estate of William Poppleton, deceased. From a judgment of distribution, the petitioner, Leah Perks, appeals.

AFFIRMED.

*J. C. Walters* for appellant.

*Nebeker, Hart & Nebeker* for respondent.

APPELLANT'S POINTS.

"Marriage is a contract by which a man and woman are reciprocally engaged to live with each other during their joint lives and to discharge towards each other the duty imposed by law on the relation of husband and wife." (Bouvier's Law Dictionary; *Mott v. Mott*, 22 Pac. 1140; *Hilton v. Roylance*, 25 Utah 129; *Palmer v. Palmer*, 26 Utah 31; *Kilburn v. Kilburn*, 26 Pac. 636; *State v. Cooper*, 15 S. W. 327; *State v. Bittrick*, 15 S. W. 325; *Milford v. Worcester*, 7 Mass. 52; *Reynolds v. United States*, 98 U. S. 145; *United States v. Snow*, 4 Utah 313.)

It will not be presumed in construing a will that the testator intended to do an illegal act, when another construction can be given to a devise. (*Patterson v. McCann*, 14 N. Y. St. 385; *Davis v. Wood*, 56 Ky. 86; 29 Am. & Eng. Enc. Law, 352.)

Any provision of a will which seeks the forfeiture of an estate given by the previous terms thereof will be strictly construed, and in this case if there is any doubt as to the intention of the testator, this doubt should be resolved in favor of the devisee and against a forfeiture of the estate devised to her. (*Thompson v. Thompson*, 9 Ind. 323; *Emerson v. Simpson*, 43 N. H. 475; *Heden v. Railway Co.*, 73 Iowa 328; *Taylor v. Sutton*, 15 Ga. 103; *Magoffin v. Patton*, 4 Rawle 113; *Snyder's Estate*, 180 Pa. St. 170.)

Under the rule of the civil law all conditions in wills restraining marriage, whether precedent or subsequent, and whether there was any gift over or not were absolutely void. (2 Jarman, Wills, 46.) And the English rule is that devisees of real estate unqualifiedly restricting marriage are void. While this rule is followed in some of the United States. (*Crawford v. Thompson*, 91 Ind. 266.) The general rule is that where the restraint is only partial as where it requires consent of a parent, or not to marry under age, or not to marry into a particular family or to a particular nationality, it is good and will be enforced. (30 Am. & Eng. Enc. Law, 805; *Shackelford v. Hall*, 19 Ill. 212; *Reuff v.*

*Coleman,* 30 W. Va. 171; *Collier v. Slaughter,* 20 Ala. 263; *Graydon v. Graydon,* 23 N. J. Eq. 229.)

"Where a condition in restraint of a first marriage is sought to be imposed, there is no question that a condition in general restraint of marriage which is imposed in order to cause the beneficiary to live unmarried is contrary to public policy and void." (Rood on Wills, 611; *In re Denfield,* 156 Mass. 265; *Waters v. Tazwell,* 9 Md. 291; *Maddox v. Maddox,* 11 *Grattan* [Va.] 804; *Otis v. Prince,* 10 Gray 581; *Mourning v. Mining Co.,* 99 Mo. 320; *Williams v. Cowden,* 13 Mo. 211; *Phillips v. Ferguson,* 85 Va. 511; *Smythe v. Smythe,* 90 Va. 688; *Hoops v. Dunda,* 10 Pa. 75; Jarman on Wills [6th Ed.], star page 892; *Kennedy v. Alexander* [D. C.], 21 App. Cas. 424; *Alexander's Estate* [Cal.], 85 Pac. 308.)

### RESPONDENT'S POINTS.

"The first and great rule in the exposition of wills," said Chief Justice Marshall, "to which all other rules must bend, is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law." (*Smith v. Bell,* 6 Pet. 75, 8 L. Ed. 325; *Finlay v. King,* 3 Pet. 327, 7 L. Ed. 712.)

"In construing the holograph will of an illiterate man, the meaning of technical language may be disregarded, but no word which has a clear and definite operation can be struck out. (*Hall v. Warren,* 9 H. L. Cas. 420, 7 Jur. N. S. 1089; *Lytle v. Beveredge,* 58 N. Y. 592; *Gravenor v. Watkins,* L. R. 6 C. P. 500; *Melson v. Giles,* id. 532; *Van Nostrand v. Moore,* 52 N. Y. 12; *Chrystie v. Phyfe,* 19 N. Y. 344, 348.)

The intention of the testator must be gathered from the whole will. (*Phelp v. Bates,* 1 Conn. 92; *Goebel v. Wolf,* 10 Am. St. 464; *Tolden v. Green,* 27 Am. St. 487; *L'Etourneau v. Henquenet,* 28 Am. St. 310; *Bucker v. Burnham,* 37 Am. St. 135; *Succession of Allen,* 55 Am. St. 295; *Eldred v. Neek,* 75 Am. St. 86; *Miller v. Worrall,* 90 Am. St. 480; *Bell County v. Alexander,* 73 Am. Dec. 268.)

"The court is bound to give effect to every word in the will so far as that can be done without contravening the general intent as clearly gathered from the whole instrument." (*Gray v. Minnethorpe,* 3 Ves. 105; *Constantine v. Constantine,* 6 Ves. 102; *Homer v. Shelton,* 2 Met. 202; *Lasher v. Lasher,* 13 Barb. 106; *Chrystie v. Phyfe,* 19 N. Y. 344, 388.)

In construing wills, the intention of the testator must govern his devise, if not contrary to law, and if it can be ascertained. (*Hunt v. Johnson* [1850], 49 Ky. [10 B. Mon.] 342; *Sprankle v. Commonwealth* [Pa. 1884], 2 Walk. 420; *Brooks v. Evetts* [1871], 33 Tex. 732; *Button v. American Tract Soc.* [1851], 23 Vt. 336.)

Proof of the situation and circumstances of a testator and his family, of his property, and legatees, and the like, are always admissible to aid the construction of a will. (*Travis v. Morrison,* 28 Ala. 494; *Stevenson v. Druley,* 4 Ind. 519; *Jackson v. Hoover,* 26 Ind. 511; *Goodhue v. Clark,* 37 N. H. 525; *Woods v. Woods,* 55 N. C. 420; *In re Barr's Estate,* 2 Pa. [2 Barr] 428; *Rewalt v. Ulrich,* 23 Pa. [11 Harris] 388; *Hunt v. White,* 24 Tex. 643; *Succession of Thorame,* 12 La. Am. 384; *Gillman v. Chancellor,* 43 Miss. 437, 5 Am. Rep. 498; *Lummus v. Mitchell,* 34 N. H. 39; *Edens v. Williams,* 7 N. C. 27; *Watkins v. Flora,* 30 N. C. 374.)

FRICK, J.

This is an appeal from an order or judgment of distribution entered by the district court of Cache county in a probate proceeding.

The facts involved are substantially as follows: On the 8th day of August, 1883, one William Poppleton, then a resident of Cache county, Utah, made his last will and testament in due form, by which he disposed of his real and personal property. The provisions of the will, so far as material to the questions involved in this appeal, are the following:

"I will and bequeath to my wife Annie Poppleton the fol-

34 Utah—19

lowing parcel of land, to wit: [Describing it.] It is my will that the above named real estate shall descend to my wife Annie at my death, to have and to hold in her own right and dispose of the same at her pleasure.

"I will and bequeath to Leah Perks all of that parcel of land situated as follows: [Describing it.] The conditions of this bequest are that the said Leah Perks shall be the sole owner in her own right of the property described above to be held by her for her support and the support of my children by her; but in the event of the said Leah Perks marrying again this bequest shall become null and void and the right of ownership shall revert to her children by me and be divided in equal shares amongst them, when the youngest child of hers by me shall have attained its majority—nevertheless if the said Leah Perks does marry again it is my will that she shall retain the house in which she lives and ten (10) acres of land, on a part of which the house stands, with all the appurtenances thereto to have and own for the term of her natural life but at her death it shall go to her children by me."

A provision in the same language follows the bequest in favor of Leah Perks, which is made in favor of Mary Ann Jeffs, by which certain property is devised to her upon the same conditions as those imposed upon the bequest made in favor of Leah Perks. The testator died on or about August 17, 1883. The will, for some reason, was not admitted to probate until May 19, 1888, at which time it was duly established, and letters testamentary issued to one of the executors named in the will. No distribution of the estate seems to have been asked for or made until January 11, 1907, when Leah Perks, the appellant, as one of the beneficiaries under the will, filed a petition asking for distribution of the estate in accordance with the provisions of the will. In her petition, among other things, she set forth the provisions of the will as they affected her, and, in connection therewith, alleged that she had not married since the death of the testator, and was entitled to have her distributive share set apart to her. The executor of the will filed an answer to this petition in

which he, in effect, denied that the petitioner had not married again. He also filed a petition praying for distribution of the estate, but asked for distribution in some respects different from that prayed for by Leah Perks. The petition of the executor was joined in, and, in some respects, supplemented by some of the assignees of certain devisees under the will; and they affirmatively alleged that Leah Perks had married again since the death of the testator, and that, therefore, she was not entitled to the full share bequeathed to her in the will, but to that part only which was bequeathed to her in the event that she married again. Upon these issues a hearing was had to the court, who made findings of fact and conclusions of law. The findings of fact and conclusions of law, so far as material, are as follows: "That, by the terms and provisions of the last will and testament of said decedent, it is provided: [Setting forth the terms of the will in the language hereinbefore stated]. That at the time of the making of said will, and at the time of the death of said decedent, the said Leah Perks, otherwise known as Leah Perks Poppleton, was the plural or polygamous wife of the said decedent; that both the decedent and said Leah Perks Poppleton were members of the Church of Jesus Christ of Latter-Day Saints, and believed in the teachings, doctrines, and practices existing at said time in said church, which at said time included the doctrine of polygamy or plurality of wives; that the children hereinafter in this paragraph mentioned are the children of the said decedent and said Leah Perks Poppleton, and are the fruits of the said plural or polygamous marriage between said decedent and said Leah Perks Poppleton, and the following are the names and residences of said children, the youngest of which has long since attained his majority, to wit: Rachel P. Robinson, Edwin P. Poppleton, Albert L. Poppleton, Louisa P. Nielsen, and Katie P. Larsen, deceased. That after the death of the said decedent, and prior to the 1st day of October, 1889, the said Leah Perks Poppleton entered into another plural or polygamous marriage with one Crabtree, and that she has never been legally married to any person since the date of

the death of William Poppleton, deceased. That said Leah Perks Poppleton has married again within the meaning of that expression as used by the decedent in connection with the devise to the said Leah Perks, otherwise known as Leah Perks Poppleton, and that the children of the said Leah Perks Poppleton and their grantees are entitled to the premises so devised or intended to be devised to the said Leah Perks Poppleton, except that the said Leah Perks Poppleton is entitled to retain the house in which she lives, as referred to in said will, and ten acres of land on a part of which the house stands, with all the appurtenances thereto, to have and to hold for the term of her natural life, and at her death to go to her children by the said decedent as hereinbefore named in the said findings of fact, and to their grantees, as provided in said will." Upon these findings and conclusions the court entered judgment awarding to Leah Perks that portion or share which she was given under the will in case she married again, and assigned the other parts to her children by the deceased, or to their assigns. From this judgment Leah Perks appeals.

In his brief counsel for appellant states his contention thus: "Appellant contends that the word 'marriage' is a technical word and has a well-defined legal meaning, and that, as used in the will, is capable of but one construction or interpretation." He further contends that the terms "marry" and "marriage" have so often been defined in the adjudicated cases that they have acquired a fixed legal meaning. From this he concludes that it necessarily follows that, when the testator imposed the condition in his will by which Leah Perks should be divested of a certain part of the property bequeathed to her in the event that she married again, the testator referred to and intended a marriage as the term is technically understood and applied. That is, by "marrying again" the testator meant that relation which a single man and a single woman assume toward each other by entering into the marriage relation; and that he did not mean, and cannot be held to have meant, any other relation, although such other relation be called a marriage. In other words, the

·marriage intended by the testator, he contends, was one the law permitted, and none other. In support of his contention he cites section 2777, Comp. Laws 1907, which provides: "Technical words in a will are to be taken in their technical sense unless the context clearly indicates a contrary intention." This section, however, is but declaratory of the rule prevailing at common law, and is a rule of construction merely. Section 2767, Comp. Laws 1907, provides: "A will is to be construed according to the intention of the testator." This section controls all other sections in which rules of construction are given, in that no rule provided for is to be given force and effect except for the purpose of ascertaining the real intention of the testator as expressed by him. This is the ultimate object to be kept in mind and to which all rules must yield. Rules of construction, therefore, are to be resorted to as mere aids or guides for the purpose of attaining the ultimate object, namely, the real intention of the testator. This intention is to be ascertained from the language used by the testator in the will. If the meaning is clear from the words used, a resort to rules of construction is neither necessary nor permissible. Where, however, the meaning of a word or phrase employed by the testator is not clear, and may be given either one of two or more meanings when read in the light of the whole instrument, the courts not only may, but are required to, look to the condition and circumstances surrounding the testator at the time the will was made, and in the light of these determine his true intention. Our duty, therefore, is to ascertain this intention. The elements which govern in ascertaining the intention of the testator are well illustrated in the following cases. In *Kelley's Estate,* 193 Pa. 58, 44 Atl. 292, Mr. Justice Dean states the law as follows: "There is no technical rule of construction which defeats the intent of the testator, if that intent be manifested by his words." In *Adams v. First Baptist Church,* 148 Mich. 140, 111 N. W. 757, 11 L. R. A. (N. S.) 509, the reporter, in an exhaustive note to that case, at page 515 of 11 L. R. A. (N. S.), deduces the controlling

elements in this regard from a large number of English and American cases to be as follows:

"In settling the meaning and effect of any provision in a last will and testament, the determining factor is the intention of the testator, and that intention is ascertained not alone from the provision itself, but from a scrutiny of the entire instrument of which it is a part, and in the light of the conditions and circumstances in which the instrument came into existence. These rules of construction are of universal application throughout the United States and Great Britain."

In *Clarke v. Boorman's Exr's,* 18 Wall. (U. S.) 502, 21 L. Ed. 904, Mr. Justice Miller, after referring to the various technical rules of construction, proceeds as follows:

"To these considerations it is to be added that of all legal instruments wills are the most inartificial, the least to be governed in their construction by the settled use of technical terms; the will itself being often the production of persons not only ignorant of law, but of the correct use of the language in which it is written. Under this state of the science of the law, as applicable to the construction of wills, it may well be doubted if any other source of enlightenment in the construction of a will is of much assistance than the application of natural reason to the language of the instrument under the light which may be thrown upon the intent of the testator by the extrinsic circumstances surrounding its execution, and connecting the parties and the property devised with the testator and with the instrument itself."

In *Goebel v. Wolf,* 113 N. Y. 412, 21 N. E. 389 (10 Am. St. 464), Mr. Justice Andrews, after stating the technical rules of construction, concludes as follows:

"But the rule invoked, as others of like character, is subordinate to the primary canon of construction that the construction shall follow the intent, to be collected from the whole will, and that the intention of the testator, so ascertained, must prevail; and that general rules, adopted by the courts in aid of the interpretation of wills, must give way when on a consideration of the scheme of the will, or of special clauses or provisions, their application in the particular case would defeat the intention."

The following, among a large number of cases that could be cited, further illustrate and sustain the texts quoted above:

*Eldred v. Meek,* 183 Ill. 26, 55 N. E. 536, 75 Am. St. 86; *Succession of Allen,* 48 La. Ann. 1036, 20 South. 193, 55 Am. St. 295; *Gilliam v. Chancellor,* 43 Miss. 437, 5 Am. Rep. 498; *Ducker v. Burnham,* 146 Ill. 9, 34 N. E. 558, 37 Am. St. 135; *Tilden v. Green,* 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. 487; *White v. Holland,* 92 Ga. 216, 18 S. E. 17, 44 Am. St. 87; *Gannaway v. Tarpley,* 1 Cold. (Tenn.) 572.

Applying the rules as announced in the foregoing authorities to the particular provision of the will in question, what was the intention of the testator? He used the phrase, "but in the event of the said Leah Perks marrying again," and provided that, in such event, the particular bequest made for her should terminate and another be substituted therefor. If the testator had been living in and had been practicing the usual and customary domestic relations as they applied to those who accepted and practiced the monogamic system of marriage, then, no doubt, in using the term "marry again," it would be reasonable to suppose that he meant a monogamous marriage. The testator, however, was disposing of his own property, and he could impose any lawful condition upon any bequest that to him seemed proper. If he thus believed in a peculiar system of marriage and practiced that system with the very person upon whose bequest he imposed the condition, it does not follow that he necessarily referred to a monogamous marriage only. In the absence of anything else in his will to indicate his meaning of "marry again," that term might refer to either system. But in his will he speaks of only one woman as his wife. The bequests in her favor are absolute and unconditional. But, when he refers to the appellant, he calls her by name merely, and then discloses that he has sustained certain relations to her by reference to the children of hers as being his offspring. He also refers to another woman in the same way, and imposes the same conditions upon the bequest made in her favor. It thus seems clear that it was the intention of the testator to make provision for his different families, and he thus provided homes for each one of them.

In case, however, that either one of the two women named should enter into the relation of marriage again, then the major portion of the bequests given to her should terminate and go to the children which were the issue of the marriage relation existing between the testator and the woman named in the particular bequest. In view of the time at which the will was made and the state of the domestic relations then prevailing among many of the sect to which the testator and both women belonged, it is manifest that, in his view, to "marry again" did not exclude a polygamous marriage. From the findings of the court it is clear that such a marriage, as the testator viewed the relation, was quite as moral and binding with respect to the persons entering into it as any other marriage would be. This is important merely as showing that in the situation the testator was, and in view of his beliefs, there is no force to the contention that it must be inferred that he meant no other than a lawful marriage. While a polygamous marriage was prohibited in the then territory of Utah under Act Cong., March 22, 1882, c. 47, 22 Stat. 30. (U. S. Comp. St. 1901, p. 3633), amended by 1 Comp. Laws 1888, p. 110, sec. 22, still, according to testator's views, such a marriage was not only justifiable, but was in itself right and proper. It therefore cannot be held that he intended to provide against a statutory marriage merely, but it seems reasonably clear that he intended to provide against any marriage by which some other man should sustain the relation of husband to Leah Perks, regardless of whether she became a legal or a so-called plural wife. It is the relation generally that he was providing against, and not merely against the character of the relation. If the relation was created at all by reason of a marriage, whether monogamic or polygamous, the condition of the will applied. If this was the intention of the testator —and, to our minds, there is no escape from the conclusion—it is our duty to follow such intention whether it comports with our views of morals or propriety or not.

The bequest in the will in favor of appellant comes squarely within section 2795, Comp. Laws, 1907, which was in force

at the time the will was executed, and which provides: "A conditional disposition is one which depends upon the occurrence of some uncertain event, by which it is either to take effect or be defeated." The condition in the will was the subsequent marriage of appellant. If she married again, it would defeat the bequest, and another was to be substituted therefor. The court, as a conclusion of law, found that the relation she entered into with one Crabtree constituted a marriage such as the testator intended to provide against, and thus defeated the first bequest. We think the court was right in so concluding in view of all the circumstances and the terms of the will. From the authorities cited by us it is clear the court committed no error in admitting the evidence which is reflected in the findings and upon which the court based his conclusion that the testator, by the phrase "marry again," under the circumstances, referred to a plural marriage.

We are forced to the conclusion, therefore, that the judgment is right, and it accordingly is affirmed, with costs to respondents.

McCARTY, C. J., concurs.

STRAUP, J. (concurring).

I concur. The decisive question is: In what sense did the testator use the term "marry again?" Had he simply used the word "marry," I think it then could well be said that he intended to convey a meaning in the sense as such term is generally understood and defined, and hence it would not include a polygamous marriage. But the term "marry again" implies that Leah Perks had once been married. If she married at a second or another time, the bequest was defeated. I think, therefore, it was proper to inquire into her prior matrimonial relation and to ascertain what that was. Such relation appears to have been a polygamous marriage only. By the use of the term "marry again," the testator necessarily characterized such prior matrimonial relation a marriage. If he regarded such prior relation a

marriage, I have every reason to believe that he regarded a second polygamous marriage also a marriage, and hence intended that kind of a marriage, as well as a legal or monogamous marriage, to defeat the bequest.