In the Matter of the **ESTATE OF Gordon Dean HAMILTON, deceased.**

**Mary M. HAMILTON, Appellee,**

v.

**Stuart HAMILTON and Vincent Hamilton, Appellants.**

**No. 930065–CA.**

Court of Appeals of Utah.

Feb. 11, 1994.

James R. Brown (argued), Jardine, Linebaugh, Brown & Dunn, Salt Lake City, for appellants.

Dallas H. Young, Jr. and Jerry L. Reynolds (argued), Ivie & Young, Provo, for appellee.

Before BILLINGS, GREENWOOD and RUSSON[1], JJ.

## OPINION

RUSSON, Associate Presiding Judge:

Gordon Dean Hamilton's sons, Stuart and Vincent Hamilton, appeal the trial court's final judgment awarding Mary Hamilton, Gordon Hamilton's widow, a life estate in the marital home subject to certain conditions, $4000 in cash, $43,394 in personal property, and a family allowance of $1000 per month for twenty-four months. Stuart and Vincent Hamilton further appeal the trial court's denial of their claim that Mary Hamilton be required to pay her pro rata portion of the inheritance taxes. We affirm in part, and vacate and remand in part.

## FACTS

Gordon and Mary Hamilton were married September 26, 1986. Just prior to the marriage, both parties signed an antenuptial agreement. Section III of that document provides:

A. The parties hereto have the intent and desire to define and set forth the

---

1. Judge Russon authored this opinion prior to his appointment to the Utah Supreme Court.

respective rights of each in the property of the other after their marriage.

B. The parties intend and desire that all property owned respectively by each of them at the time of the marriage, and all property that may be acquired by each of them from any source during the marriage, shall be respectively their separate property except as otherwise provided herein.

Section IV states, in pertinent part:

It is the intent of the parties to dwell at the residence located at 1907 Spring Oaks Drive, Springville, Utah. Said residence and the building lot upon which it is situated shall remain titled in the name of the respective husband. In the event, however, that Gordon predeceases Mary, it is the intent of the parties that she be given a life estate in the residence and building lot so long as she does not cohabit therein with any other person.

Section V provides:

It is understood by the parties hereto that Gordon D. Hamilton owns all stock in Hamilton Brothers Electric, Inc. Said stock is to remain his sole and separate property, and he may disburse as he sees fit to his children or any other persons whatsoever. In addition thereto, Hamilton Brothers Electric, Inc. of which Gordon is the sole stockholder, owns various other items of personal property as assets of the corporation. It is clearly understood by the parties that such assets shall remain so owned and titled.

Finally, section VII states:

All real and personal property owned by either of the parties at the time of their marriage, and all real and personal property that either may acquire from any source whatsoever during their marriage, shall be their respective separate property, except if unless specifically otherwise designated at the time of acquisition thereof, or other individual separate agreement of the parties.

During the marriage, Gordon Hamilton purchased numerous items of personal property both personally and through Hamilton Brothers Electric, Inc.

On December 7, 1989, Gordon Hamilton executed his last will, ratifying therein the antenuptial agreement. Paragraph 3 of the will states, in part: "It is my intent to leave a life estate to my wife Mary M. Hamilton in the residence we have in Springville, Utah." Paragraph 4 grants his children any rights he has in his marital home "subject to a life estate my wife Mary M. Hamilton who [sic] shall have unless she remarries." However, the will makes no mention of joint tenancy in personal property to Mary Hamilton. Further, paragraph 5.1 of the will provides that:

My unsecured debts, secured debts, administration expenses, funeral expenses, and all federal and state estate and inheritance taxes shall be paid out of my residuary estate.... Provided further, it is my intention that all nonprobate property creating a federal or state estate or inheritance tax burden upon my estate will share proportionately with my residuary estate the respective burden of such taxes. Therefore, I direct that any of the hereinbefore described taxes payable by reason of the taxability of any gifts in contemplation of death, retained life estates, transfers taking effect at death, revocable transfers, annuities, joint tenancies, powers of appointment, life insurance proceeds, or other nonprobate assets shall be paid by the recipient of such assets and that any of such taxes payable because of the taxability of any part of my residuary estate shall be paid out of my residuary estate, subject to two exceptions: (1) The recipients of life insurance proceeds and power of appointment property shall pay their share of federal estate taxes as provided by federal law. (2) None of the hereinbefore described taxes shall be borne by my wife with respect to any probate or nonprobate assets passing to her and qualifying for the federal estate tax marital deduction.

Gordon Hamilton died January 17, 1990, and his will was subsequently admitted to probate.

During the course of the probate proceedings, Mary Hamilton testified that she and Gordon Hamilton had made gifts to each other of four bronzes: the Stage Coach, the Caba, the Little Boy, and the Little Girl.

Mary Hamilton's testimony varied as to other items of personal property in the house. She claimed ownership of some of the property on the basis that she had bought it. However, she later claimed that she and her husband had jointly purchased the property. At another point, she claimed a right to use the property, so long as she had a life estate in the home.

Additionally, two neighbors of Gordon and Mary Hamilton, Richard and Sandra Tretheway, testified at the probate proceedings that during a visit to the Hamilton home, Gordon and Mary Hamilton had indicated that they had given the four bronzes to each other as a Christmas gift.

The trial court awarded Mary Hamilton a life estate in the home provided that she not remarry or cohabit with anyone in the marital home, $4000 in cash, $43,394 in personal property as joint tenancy property, and a family allowance of $1000 per month for twenty-four months. The court additionally denied Stuart and Vincent Hamilton's claim against Mary Hamilton for her pro rata portion of the inheritance taxes.

Stuart and Vincent Hamilton appeal, challenging the trial court's determinations that: (1) Gordon Hamilton created a life estate in the marital home in Mary Hamilton barring remarriage or cohabitation on her part; (2) a joint tenancy agreement existed between Gordon and Mary Hamilton as to the marital home's furnishings; (3) Mary Hamilton is entitled to a family allowance; and (4) Mary Hamilton is not obligated to pay her pro rata share of the inheritance taxes.

### LIFE ESTATE

■ Stuart and Vincent Hamilton argue that the trial court erroneously found that Gordon Hamilton's will granted Mary Hamilton a life estate subject to certain conditions. Specifically, they assert that since the will contains no clear and unequivocal granting language, Mary Hamilton is not entitled to any interest in the marital home. Mary Hamilton responds that the language of the will supports the trial court's finding that she is entitled to a life estate in the home, subject to certain conditions, and therefore, the trial court did not err in so finding.

■ In construing a will, we are bound by the fundamental principle that "a court must look to the testator's intent as expressed in the will." *Estate of Ashton v. Ashton*, 804 P.2d 540, 542 (Utah App.1990) (citing Utah Code Ann. § 75–2–603 (1978); *In re Estate of Gardner*, 615 P.2d 1215, 1217 (Utah 1980)). Moreover, if the will is ambiguous, any rule of construction normally used in other writings must yield to the intention of the testator as revealed in the instrument. *In re Johnson's Estate*, 64 Utah 114, 117, 228 P. 748, 749 (1924); *In re Poppleton's Estate*, 34 Utah 285, 293, 97 P. 138, 140 (1908). The factual issue of the decedent's intent is one we review with deference to the trial court's findings, if adequate, and we reverse only upon a finding of clear error. Utah R.Civ.P. 52(a); *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989). In order to show clear error, the appellant "must marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be 'against the clear weight of the evidence,' thus making them 'clearly erroneous.'" *Bartell*, 776 P.2d at 886 (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)).

■ A testator's intent may be " 'ascertained not alone from the provision itself, but from a scrutiny of the entire instrument of which it is a part, and in the light of the conditions and circumstances in which the instrument came into existence.'" *Poppleton's*, 34 Utah at 294, 97 P. at 140 (quoting *Adams v. First Baptist Church*, 148 Mich. 140, 111 N.W. 757, 11 L.R.A. (N.S.) 509, 515 (1907)); *accord Gardner*, 615 P.2d at 1217; *Ashton*, 804 P.2d at 542. Thus, extrinsic evidence may be used to ascertain what the testator intended.

In the case at bar, Gordon Hamilton's intent is plainly revealed in the language of paragraphs 3 and 4 of the will. Paragraph 3 provides: "It is my intent to leave a life estate to my wife Mary M. Hamilton in the residence we have in Springville, Utah." Paragraph 4 states that his children's rights to the marital home are "subject to a life

estate my wife Mary M. Hamilton who [sic] shall have unless she remarries." Additionally, the language of section IV of the antenuptial agreement states: "In the event, however, that Gordon predeceases Mary, it is the intent of the parties that she be given a life estate in the residence and building lot so long as she does not cohabit therein with any other person." Thus, even though the will does not contain specific granting language, strict construction must yield to Gordon Hamilton's intent, which is apparent from the language quoted above. Accordingly, the trial court's finding that Gordon Hamilton granted Mary Hamilton a life estate provided that she not remarry or cohabit with anyone in the marital home is not clearly erroneous.

Stuart and Vincent Hamilton nonetheless argue that *In re Estate of Hunt,* 842 P.2d 872 (Utah 1992) and *In re Estate of Lewis,* 738 P.2d 617 (Utah 1987) compel reversal on this issue in the present case. We disagree. In *Hunt,* the Utah Supreme Court upheld the trial court's determination that Hunt's will did not dispose of his assets on the ground that the language of the will "falls short of expressing any intent on the part of the testator" to leave his property to the parties named in the will. *Hunt,* 842 P.2d at 874. Such intent is clearly not lacking in the case at bar. Likewise, the supreme court found in *Lewis* that the language of the will was inadequate to determine the testator's intent. *Lewis,* 738 P.2d at 621. That problem is not present in this case; thus, both cases are readily distinguishable.

■ Additionally, Mary Hamilton argues that appeal on this point is frivolous under Utah Rule of Appellate Procedure 33(a).[2] A frivolous appeal is "one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." Utah R.App.P. 33(b). Moreover, this court has defined a frivolous appeal as one without reasonable legal or factual basis, *Backstrom Family Ltd. Partnership v. Hall,* 751 P.2d

1157, 1160 (Utah App.1988), or " '[o]ne in which no justiciable question has been presented and ... is readily recognizable as devoid of merit in that there is little prospect that it can ever succeed.' " *Farrell v. Porter,* 830 P.2d 299, 302 (Utah App.1992) (quoting *Hunt v. Hurst,* 785 P.2d 414, 416 (Utah 1990)).

■ However, " 'sanctions for frivolous appeals should only be applied in egregious cases, lest there be an improper chilling of the right to appeal erroneous lower court decisions.' " *Hinckley v. Hinckley,* 815 P.2d 1352, 1355 (Utah App.1991) (quoting *Porco v. Porco,* 752 P.2d 365, 369 (Utah App.1988)). "Egregious cases may include those obviously without merit, with no reasonable likelihood of success, and which result in the delay of a proper judgment." *Maughan v. Maughan,* 770 P.2d 156, 162 (Utah App.1989) (citing *Porco,* 752 P.2d at 369). While we hold in favor of Mary Hamilton on this issue, we are unable to say that Stuart and Vincent Hamilton's appeal was obviously without merit or filed merely for the purpose of delay. Accordingly, we decline to award Rule 33 sanctions on this issue.

## JOINT TENANCY

■ Stuart and Vincent Hamilton assail the trial court's finding that Mary Hamilton was entitled to a joint tenancy interest in the marital home's furnishings, asserting that there is no indication in the will or in the antenuptial agreement of the creation of a joint tenancy in the personal property of the home. Mary Hamilton concedes that the trial court's finding is not supported by the evidence, but argues that: (1) since she and Gordon Hamilton gave the four bronzes as a gift to each other, the trial court's finding as to the four bronzes is supported by the evidence and should be affirmed; and (2) as to the other property in question, this court should modify the trial court's ruling to pro-

---

**2.** Utah Rule of Appellate Procedure 33(a) provides:

　　Except in a first appeal of right in a criminal case, if the court determines that a motion made or appeal taken under these rules is either frivolous or for delay, it shall award just

damages, which may include single or double costs ... and/or reasonable attorney fees, to the prevailing party. The court may order that the damages be paid by the party or by the party's attorney.

vide her with a life estate in the marital home's furnishings.

■ A trial court's findings of fact are not to be disturbed unless they are clearly erroneous. Utah R.Civ.P. 52(a). "Under this standard, we do not set aside the trial court's factual findings unless they are against the great weight of the evidence or we otherwise reach a firm and definite conviction that a mistake has been made." *Southland Corp. v. Potter*, 760 P.2d 320, 321 (Utah App.1988) (citing *Western Kane County Spec. Serv. Dist. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376, 1377 (Utah 1987)). Moreover, it is the responsibility of the party challenging a finding of fact to marshal the evidence supporting that finding and demonstrate that such finding is clearly erroneous. *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989).

As to the four bronzes, both Mary Hamilton and the Hamiltons' neighbors, Richard and Sandra Tretheway, testified that Gordon and Mary Hamilton had given the four bronzes to each other as a Christmas gift, and Stuart and Vincent Hamilton have failed to marshal any evidence to the contrary. Thus, we must assume the record supports the trial court's finding that Mary Hamilton is entitled to a joint tenancy interest in the four bronzes, *Watson v. Watson*, 837 P.2d 1, 4 (Utah App.1992), and therefore conclude that such finding is not clearly erroneous.

■ However, as to the remainder of the property, Mary Hamilton concedes that the evidence does not support the trial court's finding that she is entitled to a joint tenancy interest in the marital home's furnishings. In fact, section VII of Gordon and Mary Hamilton's antenuptial agreement specifically states:

All real and personal property owned by either of the parties at the time of their marriage, and all real and personal property that either may acquire from any source whatsoever during their marriage, shall be their respective separate property, except if unless specifically otherwise designated

at the time of acquisition thereof, or other individual separate agreement of the parties.

■ Nevertheless, Mary Hamilton argues that we should modify the trial court's findings to indicate that she is entitled to a life estate in the furnishings of the marital home, other than the four bronzes. However, because we lack the advantage of seeing and hearing witnesses testify, we are not in a position to make our own findings of fact. *Gillmor v. Gillmor*, 745 P.2d 461, 462 (Utah App.1987), *cert. denied*, 765 P.2d 1278 (Utah 1988). Moreover, to do so would be to invade the province of the trial court. *See Rucker v. Dalton*, 598 P.2d 1336, 1338 (Utah 1979) (holding that it is not an appellate court's function to make findings of fact). Accordingly, we hold that the trial court's determination that Mary Hamilton is entitled to a joint tenancy interest in the furnishings of the marital home, other than the four bronzes, is clearly erroneous and therefore requires remand.[3]

## FAMILY ALLOWANCE

■ Stuart and Vincent Hamilton argue that the trial court improperly awarded Mary Hamilton a family allowance of $1000 per month for twenty-four months following Gordon Hamilton's death. Mary Hamilton responds that the evidence before the trial court supports its award of a family allowance, and thus, such award should be affirmed.

Utah Code Ann. § 75-2-403(1) (1993) provides, in pertinent part:

In addition to the right to homestead allowance and exempt property, if the decedent was domiciled in this state, the surviving spouse and minor children whom the decedent was obligated to support and children who were in fact being supported by him are entitled to a reasonable allowance in money out of the estate for their maintenance during the period of administration.

---

3. Furthermore, Mary Hamilton's argument fails because it is not properly before us. Mary Hamilton never challenged this finding below, nor appealed the finding to this court, but simply raised this contention for the first time on appeal after conceding that Stuart and Vincent Hamilton were correct that no joint tenancy interest existed in the furnishings of the marital home.

In other words, section 75–2–403(1) entitles a surviving spouse to an allowance for his or her maintenance during the period of administration of the will.

However, such an allowance is not an absolute right. *In re Bundy's Estate*, 121 Utah 299, 304, 241 P.2d 462, 464 (1952). The trial court may, in its discretion, determine whether a family allowance is needed on the basis of the specific facts in the case before it. *See id.* The factors to be used in determining the amount of the family allowance during administration include the age of the surviving spouse, the surviving spouse's health, the surviving spouse's previous standard of living, the value of the estate, and the value and nature of the surviving spouse's own separate property. *Id.* Thus, we review the trial court's award of a family allowance to Mary Hamilton under the facts of this case for an abuse of discretion.

In the case at bar, the trial court made the following findings of fact, which the parties do not dispute on appeal: (1) Mary Hamilton's net worth as of the date of Gordon Hamilton's death was $2215; (2) After Gordon Hamilton's death, Mary Hamilton received $50,000 in life insurance proceeds, $23,353 in pension benefits, and a $10,000 insurance settlement; (3) At the time of trial, Gordon Hamilton's estate was valued at $1,681,745; (4) During Mary and Gordon Hamilton's marriage, they traveled extensively and enjoyed "a handsome lifestyle"; (5) Following Gordon Hamilton's death, Mary Hamilton's claimed living expenses were approximately $2382 per month, which were not unreasonable in light of the lifestyle that the Hamiltons had previously enjoyed; (6) Mary Hamilton has disposable income of approximately $1300 per month from her employment with Hamilton Brothers Electric, Inc; and (7) "[I]n order to obviate the necessity of depleting her capital assets, Mary Hamilton reasonably requires $1,000.00 per month in addition to her monthly income in order to support herself." These findings of fact clearly indicate that the trial court properly considered the relevant factors in determining that Mary Hamilton was in need of a family allowance. Accordingly, we hold that the trial court did not abuse its discretion in

awarding Mary Hamilton a family allowance under Utah Code Ann. § 75–2–403(1) (1993).

## INHERITANCE TAXES

Stuart and Vincent Hamilton argue that the trial court erred in denying their claim that Mary Hamilton be required to pay her pro rata share of the inheritance taxes. Specifically, they assert that if Mary Hamilton is entitled to a life estate in the marital home, she must pay her pro rata share of the inheritance taxes on her life estate.

Utah Code Ann. § 75–3–916(6) (1993) provides, with our emphasis:

No interest in income and *no estate for years or for life or other temporary interest in any property* or fund *is subject to apportionment* as between the temporary interest and the remainder. *The tax on the temporary interest* and the tax, if any, on the remainder *is chargeable against the corpus of the property* or funds subject to the temporary interest and remainder.

Further, the Utah Supreme Court has stated that "there is a strong policy in favor of the equitable allocation of the tax burden provided in [section 75–3–916], and ... a direction to the contrary in a will or other dispositive instrument must be expressed in terms that are specific, clear, and not susceptible of reasonable contrary interpretation." *In re Estate of Huffaker*, 641 P.2d 120, 121 (Utah 1982). Thus, since section 75–3–916 supports the trial court's determination that Mary Hamilton does not owe a pro rata share of inheritance taxes on her life estate in the marital home, we will reverse that determination only if there is specific and clear language in Gordon Hamilton's will directing that the tax burden should be otherwise divided.

Section 5.1 of Gordon Hamilton's will states, with our emphasis:

My unsecured debts, secured debts, administration expenses, funeral expenses, and *all federal and state estate and inheritance taxes shall be paid out of my residuary estate....* (2) *None of the hereinbefore described taxes shall be borne by my wife* with respect to any probate or nonprobate assets passing to her and qualify-

ing for the federal estate tax marital deduction.

Not only does this section of the will fail to clearly and specifically order division of inheritance taxes contrary to section .75–3–916, but it clearly and specifically supports that section's imposition of taxes on the corpus of the estate. This is especially true in light of Gordon Hamilton's apparent intent in section 5.1(2) to keep Mary Hamilton from having to pay inheritance taxes. Accordingly, we hold that the trial court correctly determined that Mary Hamilton did not owe a pro rata share of inheritance taxes.

## CONCLUSION

The trial court properly awarded Mary Hamilton (1) a life estate in the marital home subject to certain conditions, (2) a joint tenancy interest in the four bronzes, and (3) a family allowance under Utah Code Ann. § 75–2–403(1) (1993). Moreover, it correctly determined that Mary Hamilton did not owe a pro rata portion of the inheritance taxes. Accordingly, as to these issues, the trial court's final judgment is affirmed. We vacate and remand the trial court's joint tenancy determination as to the remainder of the marital home's furnishings for further proceedings consistent with this opinion.

BILLINGS and GREENWOOD, JJ., concur.